IN THE CIRCUIT COURT FOR
COFFEE COUNTY, ALABAMA
ENTERPRISE DIVISION

| | |
|---|---|
| TAMMIE G. ELLIOTT and<br>MARK ELLIOTT,<br><br>  Plaintiffs,<br><br>vs.<br><br>PAX ACADEMIC EXCHANGE,<br><br>  Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  CASE NO.: CV 05-___134___<br>)<br>)<br>)<br>) |

## COMPLAINT

COME NOW the Plaintiffs Tammie G. Elliott and Mark Elliott (collectively referred to hereinafter as the "Elliotts") and file the following complaint for relief against PAX Academic Exchange (hereinafter referred to as "PAX"):

1. The Elliotts are adults over the age of 19, who reside in Enterprise, Alabama.

2. PAX is a program which assists students and hosts in providing exchange opportunities, including, inter alia, opportunities for foreign students to visit and study with a host family in the United States. PAX is a New York corporation with an address of 242 King Street, Port Chester, NY 10573. At all times material hereto, PAX was doing business by agent in the Enterprise Division of Coffee County, Alabama.

3. The Elliotts opened their home to a foreign exchange student in an arrangement with PAX (hereinafter the "student").

4. Prior to the Elliotts agreeing to host the student, the Elliotts asked a number of questions of PAX. Said questions were necessitated, in part, by the fact that Mr. Elliott was active duty U.S. military, and by the fact that the Elliotts wished to protect the safety, health, and welfare of their minor son, themselves, and their home.

5. On or about May 2004 and thereafter, PAX, through its agents, including Laura Aguilar assured the Elliotts and made representations that:

a. Any student hosted by the Elliotts would be tested for communicable diseases, including HIV.

b. Any student hosted by the Elliotts would be free from communicable diseases, including HIV.

c. Any student hosted by the Elliotts would be of good health and well adjusted.

d. Any student hosted by the Elliotts would be credentialed regarding the same.

e. Any student hosted by the Elliotts would be required to have health insurance in place to cover any expenses.

f. The only expenses for a student for which the Elliotts would be responsible would be the provision of food and shelter.

6. The Elliotts were scheduled to host a student for the 2004-2005 school term.

7. The student arrived to stay with the Elliotts on or about August 28, 2004.

8. The student suffered various sicknesses following arrival. By November, the student was required to have numerous treatments, including treatment involving chloroquine, a drug used to treat malaria. In December, the student was diagnosed as HIV positive.

9. Prior to returning to her native country, the student damaged the home of the Elliotts, including their stove, cabinets, couch, refrigerator, and ventilation system.

10. Prior to returning to her native country, the student stole various items from the Elliotts including bedding and towels.

11. Despite the assurances of PAX, the Elliotts have been caused to incur medical expenses for the student, and are still receiving bills from treatment, totaling several thousands of dollars.

12. Because of their exposure to the child, the Elliotts and their minor child will be required to seek testing for HIV for the next five years.

13. The actions of PAX and its agents were done intentionally, recklessly, wantonly, consciously or deliberately, with malice, oppression, grossly, or with insult, or contumely. Further, the Elliotts have been caused emotional distress and mental anguish, including

worry, concern, anxiety, embarrassment, anger, fear, frustration, disappointment, annoyance, inconvenience, and humiliation.

### Count I – Fraud

14. All previous paragraphs are incorporated herein by reference.

15. PAX and its agents made misrepresentations of facts to the Elliotts as set out above.

16. Said misrepresentations were made wilfully, recklessly, mistakenly, and/or with an intent to deceive, and/or known to be false at the time said representations were made.

17. Said misrepresentations were misrepresentations of material facts, and were made with an intent to induce the Elliotts to act thereon.

18. The Elliotts did, without knowledge of the falsity, act upon said misrepresentations to their injury and detriment.

19. Wherefore, the Elliotts pray for the relief set out in the prayer for relief below.

### Count II – Suppression

20. All previous paragraphs are incorporated herein by reference.

21. PAX concealed or withheld material facts from the Elliotts as set out above.

22. The Elliotts acted in reliance upon said suppressions, without knowledge of such material facts.

23. The Elliotts were caused to suffer injury and damage thereby.

24. Wherefore, the Elliotts pray for the relief set out in the prayer for relief below.

### Count III – Promissory Fraud

25. All previous paragraphs are incorporated herein by reference.

26. PAX made misrepresentations of facts to the Elliotts as set out above.

27. Said misrepresentations were made wilfully, recklessly, mistakenly and/or with the intent to deceive, and/or were known to be false at the time said representations were made.

28. PAX had an intention not to perform the acts promised and had an intention to deceive the Elliotts.

29. Said misrepresentations were misrepresentations of material facts, and were made to induce the Elliotts to act thereon.

30. The Elliotts did, without knowledge of the falsity, act upon said misrepresentations to their injury and detriment.

31. Wherefore, the Elliotts pray for the relief set out in the prayer for relief below.

### Count IV – Breach of Agreement

32. All previous paragraphs are incorporated herein by reference.

33. PAX owed the Elliotts contractual duties arising from their respective relationships.

34. PAX breached said duties as set out above.

35. The Elliotts have fulfilled all duties required of them by same.

36. The Elliotts have been caused to suffer injury and damage as a result of said breaches.

37. The Elliotts have been damaged as set out above and demand the relief set out below in the Prayer for Relief.

### Count V – Negligence/Wantonness

38. All previous paragraphs are incorporated herein by reference.

39. PAX owed the Elliotts duties of reasonable, due, or ordinary care, and duties not acted out of inattention, thoughtlessness, heedlessness, and statutory duties imposed as a result of the landlord/tenant relationship. Further, PAX owed the Elliotts duties not to act wrongfully with a purpose or design, or consciously or intentionally wrongful.

40. PAX breached said duties as set out above.

41. The Elliotts were proximately caused to suffer injury thereby.

42. The Elliotts have been damaged as set out above, and demand the relief set out below in the Prayer for Relief.

### PRAYER FOR RELIEF

WHEREFORE, the Elliotts pray that the Court will render a judgment providing them with the following relief:

A. Compensatory damages.

B. Punitive damages.

C. All other relief to which the Elliotts may be entitled by the common law or statutory law of the United States and Alabama, or by Equity and good conscience.

D. The Elliotts do not seek, and will not accept damages in excess of seventy-four-thousand-nine-hundred-ninety-nine dollars and ninety-nine cents ($74,999.99).

M. CHAD TINDOL (TIN011)
Counsel for Plaintiffs

OF COUNSEL:

MARSH, COTTER & TINDOL, LLP
P.O. Box 310910
Enterprise, Alabama 36331-0910
(334) 347-2626
(334) 393-1396 (fax)

**Serve Defendant by Certified Mail, return receipt requested:**

PAX Academic Exchange
242 King Street
Port Chester, NY 10573